IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JONATHAN W.,[1]

      Plaintiff,

v.                                                                    Case No. 20-cv-01313-JCH/SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

Plaintiff argues that the Commissioner committed error when she denied Plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues that the ALJ failed to consider Plaintiff's inability to wear pants and closed-toed shoes. Plaintiff also argues that the ALJ failed to properly consider treating physician Dr. Bergsten and consultative examiner Dr. DeBernardi's opinions. On May 18, 2022, the Honorable Judith C. Herrera referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 29. I recommend that the Court remand this case based on the ALJ's failure to consider Plaintiff's alleged inability to wear pants and closed-toed shoes as well as the ALJ's partially erroneous assessment of Dr. Bergsten's opinion as described below.[2]

---

[1] In the interest of privacy, this document uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this document uses the same designation for a non-governmental party's immediate family member.

[2] I reserve discussion of the background, procedural history, and medical records relevant to this appeal for my analysis.

## APPLICABLE LAW

    A.    <u>Disability Determination Process</u>

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

2

>   most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

    A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

# ANALYSIS

Plaintiff makes two arguments on appeal: that the ALJ failed to consider Plaintiff's inability to wear pants and closed-toed shoes due to pain at step four and that the ALJ failed to properly consider the opinions of two physicians. I address each in turn.

## I.   Plaintiff's inability to wear pants and closed-toed shoes

Plaintiff argues that he testified that his fibromyalgia makes his body over-sensitized to clothing, which means that he must wear open-toed shoes and shorts rather than the closed-toed shoes and slacks that would be required for the jobs listed at step five. Doc. 17 at 24. He claims that the ALJ failed to consider this evidence, which is prejudicial because it would have resulted in a finding of disability. *Id.* Defendant responds that the ALJ is not required to discuss every piece of evidence in the record and that the ALJ considered the record of symptoms of his fibromyalgia, including sharp pain in his toes, ankles, and low back. Doc. 22 at 5-6.

Plaintiff's testimony was that he could only wear closed-toed shoes and jeans or stiffer pants for twenty minutes before becoming distracted by the pain. AR 44. He generally wears open-toed orthopedic sandals unless it rains, in which case he "will suffer through a closed toe shoe." AR 43. A function report on August 12, 2019 also indicates that Plaintiff said "some of his clothes hurt and irritate his body." AR 321. Plaintiff's attorney cross-examined the vocational expert ("VE") at the hearing and inquired whether the jobs the VE identified could be performed while wearing open-toed shoes or shorts as opposed to office attire such as slacks and closed-toed shoes. AR 61-62. The VE stated that wearing open-toed shoes would be a special accommodation and that office jobs, including all the jobs he had listed for the relevant hypothetical, generally would not permit this attire. AR 62. However, the VE did clarify that

there could be other jobs at the light or sedentary level that did not involve working in an office setting, although he did not list any. *Id.*

The ALJ need not discuss every piece of evidence, but the "record must demonstrate that the ALJ considered all of the evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see* 20 C.F.R. § 404.1529(a) ("We will consider *all* of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work." (emphasis added)). While the ALJ does not have to discuss all the claimant's statements, especially when they are cumulative or irrelevant, the ALJ must demonstrate that she considered all the relevant statements. The ALJ can either address the allegations and find them not supported by the record, or the ALJ can accept the allegations and incorporate them into the RFC. Here, the ALJ did neither.

I find no evidence the ALJ considered the limitation on wearing clothing and shoes, and I find that it is relevant to the claimant's disability application. Plaintiff's testimony and his attorney's colloquy with the VE establish that, if credited, this side effect of Plaintiff's fibromyalgia would prohibit him from working the jobs the ALJ designated at step five. Notably, the ALJ at least partially credited Plaintiff's symptoms, limiting him to "never" climbing ladders or scaffolding due to "fibromyalgia symptoms including sharp pain in the toes, ankles and low back." AR 21. I therefore cannot assume that the ALJ rejected, wholesale, all of Plaintiff's subjective symptom evidence for the various reasons stated in the decision. Because the ALJ made no specific mention of issues with Plaintiff's clothing, her discussion of his fibromyalgia symptoms leaves it unclear whether she took his allegations of limited attire into consideration, and if so, why she rejected these allegations. This constitutes error.

**II.     Physician opinions**

A. <u>Background</u>

Dr. Bergsten, Plaintiff's treating physician, submitted a letter dated February 18, 2019. AR 497. The general tone of Dr. Bergsten's letter was that although Plaintiff has made significant improvements with his current medication regimen, "[d]espite this improvement he is still not able to work full-time and has been suffering from symptoms for over 5 years now." *Id.* The ALJ found the opinion unpersuasive because it was not supported by treatment records, particularly a June 2018 record indicating that Plaintiff's "overall quality of life has improved dramatically with cannabis and antidepressants." AR 23 (citing AR 374). The ALJ also finds the letter unpersuasive because its contents are inconsistent with evidence from other sources indicating that Plaintiff's symptoms stabilized or improved with prescribed medication. AR 23.

In addition to the letter, Dr. Bergsten also submitted a medical source statement in August 2019. AR 888; *see also* AR 23 (ALJ erroneously refers to this source as being submitted in May 2019). Dr. Bergsten identified various limitations on Plaintiff's ability to sit, stand, walk, and lift. *Id.* at 888-91. The ALJ found this opinion unpersuasive because it was not consistent with Plaintiff's statements to Dr. Young-Rodriguez about how much he could sit, stand, walk, and lift. AR 23 (citing AR 862).

Dr. DeBernardi, the consultative examiner, examined Plaintiff on April 26, 2019. She outlined many of Plaintiff's symptoms and the tests she administered, then concluded with the statement that Plaintiff's depression and anxiety "would likely impact his ability to be a dependable employee or to tolerate changes in the work environment." AR 870. The ALJ found her opinion unpersuasive because "Dr. DeBernardi states the claimant's ability to be a dependable employee or tolerate changes in the work environment would be affected but she

7

does not say how or to what extent." AR 23. The ALJ also found her opinion inconsistent with the records showing Plaintiff was stable or improved with medication, and with Plaintiff's activities of daily living. *Id.*

On appeal, Plaintiff argues that the Court should reverse because the ALJ failed to consider the consistency of Dr. Bergsten and Dr. DeBernardi's opinions. Doc. 17 at 24. He argues that the ALJ failed to consider that improvement with treatment is not an inconsistency with Dr. Bergsten's opinion because Dr. Bergsten concurred that Plaintiff improved with treatment. *Id.* at 25. He also argues that the ALJ fails to consider the supportability of Dr. Bergsten's opinions. *Id.* Finally, he argues that the ALJ improperly found Dr. Young-Rodriguez's opinion more persuasive than the opinion of treating physician Dr. Bergsten. *Id.* at 26.

Defendant responds that the ALJ provided a "reasoned and sufficient assessment of Dr. DeBernardi's opinion" in line with the requirements of the revised regulatory framework beginning on March 27, 2017. Doc. 22 at 8-9. Defendant also argues that the ALJ was justified in her decision to reject Dr. Bergsten's opinion for lack of support in the rest of the record. *Id.* at 9-10. Finally, Defendants argue that the consistency between Dr. DeBernardi and Dr. Bergsten is not enough; the ALJ cited substantial evidence in support of her decision and Plaintiff's argument is an impermissible request to re-weigh the evidence. *Id.* at 10.

B.  Consistency of Dr. Bergsten and Dr. DeBernardi's opinions

Plaintiff first argues that the ALJ failed to consider the fact that Dr. Bergsten's and Dr. DeBernardi's opinions were consistent with each other. Doc. 17 at 25. Consistency is a mandatory factor for an ALJ to consider in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(a). But I am not persuaded the ALJ failed to consider this factor. The ALJ

described Dr. Bergsten's opinion that Plaintiff is unable to work and described Dr. DeBernardi's opinion that Plaintiff's conditions would impact his ability to work. AR 23. This demonstrates that the ALJ considered the opinions were consistent, even if she did not expressly say so. The ALJ is not required to discuss all the evidence, only to consider all the evidence. I find no error here.

Second, Plaintiff challenges the ALJ's finding that "[t]he opinion is not supported by treatment notes" and "is not supported by objective evidence." AR 23. Plaintiff argues that Dr. Bergsten's opinion and treatment notes are in fact consistent with one another. Doc. 17 at 25. The only purported inconsistency with treatment notes that the ALJ identifies is "a June 2018 treatment note indicates that the claimant's 'overall quality of life has improved dramatically with cannabis and antidepressants.'" AR 23.[4] But, as Plaintiff correctly notes, records indicating improvement do not contradict Dr. Bergsten's opinion. Dr. Bergsten specifically notes the improvement that Plaintiff made, yet he still concludes that Plaintiff's pain and depression prevent him from working full-time. AR 497. Dr. Bergsten *agreed* that Plaintiff saw "significant improvement" through treatment, particularly antidepressants. AR 497. Thus, this is not contradictory medical evidence sufficient to find a physician's opinion unpersuasive. In this respect, the ALJ committed error.

Finally, Plaintiff challenges the ALJ's reliance on inconsistencies between Dr. Bergsten's August 2019 medical source statement and Dr. Young-Rodriguez's opinion, which included statements by the claimant that he could sit, stand, walk, and lift different amounts from the amounts Dr. Bergsten indicated. AR 23. Unlike the previous purported inconsistency, these

---

[4] The ALJ also identifies inconsistencies with objective evidence from other sources, but Plaintiff's argument specifically addresses consistency with treatment notes, so I do not consider these other purported inconsistencies.

contradictions do exist: each opinion lists different amounts of time that Plaintiff could sit, stand, and walk, and different amounts of weight that Plaintiff could lift. *Cf.* AR 888-91; AR 862. This was not error.

    C. <u>Supportability analysis for Dr. Bergsten's opinions</u>

Plaintiff argues that the ALJ focused solely on objective evidence when analyzing Dr. Bergsten's opinions, which is improper for fibromyalgia given the lack of objective diagnostic criteria. Doc. 17 at 25. As Plaintiff notes, objective evidence often does not tell the full story when it comes to fibromyalgia. *See Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004) (unpublished). But analysis of the objective physical limitations resulting from a person's fibromyalgia, as one part of the full picture, is appropriate. *See Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) (citing *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003), for the proposition that the physical limitations resulting from fibromyalgia may lend themselves to objective analysis); *Newbold v. Colvin*, 718 F.3d 1257, 1267-68 (10th Cir. 2013) (affirming ALJ's evaluation of fibromyalgia where the claimant "has had no persistent neural deficits, she has required no narcotic pain medication for her body aches, she has used only over-the-counter pain medication for her severe migraine headaches, she has experienced no medication side effects, she has required no hospitalizations, she has undergone no physical therapy, she uses no assistive devices to ambulate and she has undergone no mental health treatment" and for fourteen months, the claimant "did not receive treatment from Dr. McMillan, the physician primarily responsible for managing her fibromyalgia"); *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (unpublished) (affirming where the claimant had full range of motion in her joints, had normal strength, walked and moved without much difficulty, had been able to care for her personal needs, did household chores, went shopping, found relief with

medication, and on her doctors' recommendations, stayed active with friends and family); *Romero v. Colvin*, 563 F. App'x 618, 621-22 (10th Cir. 2014) (unpublished) (affirming based on the claimant's daily activities and her statements that she experienced relief from medication and exercise as prescribed by her doctor); *Trujillo v. Commissioner, SSA*, 818 F. App'x 835, 843-44 (10th Cir. 2020) (unpublished) (an ALJ may credit a diagnosis of fibromyalgia but must still ensure there is sufficient objective evidence to support a finding that the impairment "so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity"; ALJ may consider the claimant's longitudinal record in assessing the existence, severity, and disabling effects of fibromyalgia).

In this case, the ALJ found that Plaintiff had fibromyalgia and that this condition limited at least some of his abilities. For example, the ALJ made a factual finding that "the claimant has postural limitations due to fibromyalgia affecting his joints." AR 22. She also recognized Plaintiff's reports of pain. AR 19. Plaintiff argues that an evaluation based *only* on objective evidence is inappropriate, citing *Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004) (unpublished). Contrary to Plaintiff's argument, *Moore* did not hold that an ALJ may not evaluate fibromyalgia solely with reference to objective evidence. *Moore* held that an ALJ may not require that fibromyalgia "be established by a formalistic clinical or laboratory test." *Moore*, 114 F. App'x at 990. This case is not on point because, here, the ALJ accepted that Plaintiff has fibromyalgia and partially credited his allegations of symptoms. The ALJ never demanded that Plaintiff furnish laboratory tests to support his fibromyalgia symptoms.

Instead, the ALJ relied on evidence and factors similar to those approved by the Tenth Circuit in the cases cited above. The ALJ is not required to walk through an analysis of every

factor that goes into determining an opinion's persuasiveness. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

> D. <u>The ALJ properly relied on Plaintiff's own statements to discount Dr. Bergsten's opinion.</u>

The ALJ rejected Dr. Bergsten's opinion in part because Dr. Bergsten opined on limitations more restrictive than what Plaintiff himself admitted he could do. AR 23; *see* AR 862 (report by Dr. Young-Rodriguez stating that Plaintiff stated that he can stand at one time for 2 hours, can walk on level ground for 2 miles and can sit for 2 hours). Plaintiff argues that (1) the ALJ did not consider the inconsistency of these statements in Dr. Young-Rodriguez's opinion with other evidence, and (2) that because Dr. Bergsten was a treating physician and Dr. Young-Rodriguez was a non-examining, non-treating physician, Dr. Bergsten's opinion should have been given more persuasive weight than Dr. Young-Rodriguez. Doc. 17 at 26.

I do not consider the first of these arguments because Plaintiff does not identify what other evidence the ALJ should have considered in the course of discussing the statements made to Dr. Young-Rodriguez. *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (the claimant must not only point to evidence that he claims the ALJ failed to discuss, but also say why it was significantly probative; the court will not do so for him).

Plaintiff's second argument rests on a misapprehension of the record. The ALJ did not give Dr. Young-Rodriguez's opinion any weight; he rejected it. AR 22. That is, the ALJ was faced with an opinion that the Plaintiff has no physical limitations (Dr. Young-Rodriguez) and an opinion that Plaintiff has disabling levels of physical limitations (Dr. Bergsten). The ALJ discounted both of them in favor of other evidence in the record. AR 23. This was not error. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("there is no requirement in the

regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question").

### III. Summary

I find that Plaintiff accurately identifies error in the ALJ's failure to discuss a relevant allegation of Plaintiff's subjective symptom evidence, and in the ALJ's statement that evidence showing "improvement with treatment" was inconsistent with Dr. Bergsten's opinion. The Commissioner does not argue that these errors are harmless. I recommend the Court reverse and remand for a new hearing.

### CONCLUSION

I recommend that the Court GRANT Plaintiff's Opposed Motion To Reverse And/Or Remand, Doc. 17.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**